UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RICHARD FRANK URIAH,

                              Plaintiff,

v.                                                          6:16-CV-1006
                                                            (GTS)
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                   OF COUNSEL:

HOBAICA LAW OFFICE                             B. BROOKS BENSON, ESQ.
  Counsel for Plaintiff
2045 Genesee Street
Utica, NY 13501

U.S. SOCIAL SECURITY ADMIN.                    KATHRYN S. POLLACK, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently before the Court, in this Social Security action filed by Richard Frank Uriah

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. § 405(g), are Plaintiff's motion for judgment on the pleadings and

Defendant's motion for judgment on the pleadings.  (Dkt. Nos. 11, 12.)  For the reasons set forth

below, Plaintiff's motion for judgment on the pleadings is denied, and Defendant's motion for

judgment on the pleadings is granted.  The Commissioner's decision denying Plaintiff's

disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1975, making him 36 years old at the alleged onset date and 39 years old at the date of the ALJ's decision.  Plaintiff reported a 12th grade education.  Plaintiff has past work as a retail cashier/stocker and storekeeper, toll collector, sheet metal production worker, and warehouse worker.  Generally, Plaintiff alleges disability due to Crohn's disease with migratory arthritis.

### B. Procedural History

Plaintiff applied for Disability Insurance Benefits on February 9, 2013, alleging disability beginning February 13, 2012.  Plaintiff's application was initially denied on May 17, 2013, after which he timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at a video hearing before ALJ F. Patrick Flanagan on September 25, 2014.  On January 21, 2015, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 26-33.)[1]  On June 9, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-3.)

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following seven findings of fact and conclusions of law.  (T. 28-32.)  First, the ALJ found Plaintiff is insured for benefits under Title II until June 30, 2017.  (T. 28.)  Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date.  (*Id.*)  Third, the ALJ found that

---

[1]    The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

Plaintiff's Crohn's disease, migratory arthritis with joint pain, and gastroesophageal reflux disorder are severe impairments. (T. 28.) Fourth, the ALJ found that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 29-30.) Specifically, the ALJ considered Listings 5.06 (inflammatory bowel disease) and 14.09 (inflammatory arthritis). (*Id*.) Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> light work as defined in 20 CFR 404.1567(b). Specifically, he can lift and carry 20 pounds occasionally and 10 pounds frequently, push and pull the same amount occasionally and frequently. stand and walk 6 hours in an 8-hour workday, sit 6 hours in an 8-hour workday, occasionally reach in all planes and occasionally climb.

(T. 30.) Sixth, the ALJ found that Plaintiff is unable to perform any of his past work with the limitations in the above RFC. (T. 31.) Seventh, and last, the ALJ found that Plaintiff remains able to perform a significant number of other jobs in the national economy, such as shipping-receiving weigher, counter clerk, and children's attendant. (T. 32.) The ALJ therefore concluded that Plaintiff is not disabled.

### D. The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff makes five arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues that the ALJ failed to discuss or reference medical treatment notes from various treating physicians, asserting that this failure to mention indicates the ALJ did not properly consider all the evidence. (Dkt. No. 11, at 9-12 [Pl. Mem. of Law].)

Second, Plaintiff argues the ALJ failed to meet his concurrent duty to develop the record in failing to request a functional assessment from the treating physicians. (Dkt. No. 11, at 13-14 [Pl. Mem. of Law].)

3

Third, Plaintiff argues that the ALJ failed to provide specific reasons for finding Plaintiff did not meet a Listing, and erred in finding that he did not meet a Listing without first soliciting an opinion from his treating physicians about whether his Crohn's disease and inflammatory arthritis meet the criteria.  (Dkt. No. 11, at 14-16 [Pl. Mem. of Law].)

Fourth, Plaintiff argues that the ALJ failed to provide appropriate reasons for finding Plaintiff was not credible.  (Dkt. No. 11, at 17-20 [Pl. Mem. of Law].)

Fifth, Plaintiff argues that the vocational expert's testimony does not provide substantial evidence to support the ALJ's Step Five finding because that testimony was elicited in response to an incomplete hypothetical question.  (Dkt. No. 11, at 20-21 [Pl. Mem. of Law].)

Generally, Defendant makes four arguments in support of her motion for judgment on the pleadings.  First, in response to Plaintiff's first argument, Defendant argues that the ALJ appropriately considered the medical evidence, noting that some of the evidence that Plaintiff alleges the ALJ ignored was not submitted into the record prior to when the ALJ rendered the decision.  (Dkt. No. 12, at 16-18 [Def. Mem. of Law].)  Defendant also argues that the ALJ is not required to discuss every piece of evidence and that his failure to mention evidence specifically in the decision does not mean that he did not consider that evidence.  (Dkt. No. 12, at 19-20 [Def. Mem. of Law].)

Second, in response to Plaintiff's fourth argument, Defendant argues that the ALJ properly found Plaintiff was not credible by citing to stability of symptoms with medication, the conservative nature of Plaintiff's treatment, and his daily activities.  (Dkt. No. 12, at 20-22 [Def. Mem. of Law].)

Third, in response to Plaintiff's third argument, Defendant argues that the ALJ's finding that Plaintiff did not meet a Listing is supported by substantial evidence because the record does

not substantiate that Plaintiff meets all the criteria of a listed impairment. (Dkt. No. 12, at 22-24 [Def. Mem. of Law].)

Fourth, in response to Plaintiff's second and fifth argument, Defendant argues that the ALJ was not required to obtain an opinion statement for a treating source because there was sufficient evidence in the record for him to conclude that Plaintiff was not disabled. (Dkt. No. 12, at 24-25 [Def. Mem. of Law].) Defendant argues also that the absence of a treating physician opinion did not result in an incomplete hypothetical question being posed to the vocational expert at Step Five. (Dkt. No. 12, at 25-26 [Def. Mem. of Law].)

## II.     RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without

considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.    ANALYSIS

### A.    Whether the ALJ Properly Considered the Medical Evidence in Accordance With the Regulations

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 12, at 16-20 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

Plaintiff argues that the ALJ's failure to include a discussion of treatment notes from treating physicians Aamer Mirza, M.D., Allan Smiley, M.D., Thomas John, M.D., and Adam Berg, M.D., indicates that the ALJ did not properly consider the treatment from these sources. (Dkt. No. 11, at 9-10 [Pl. Mem. of Law].) Plaintiff asserts this is harmful error because he believes this evidence shows he would need to be absent from work multiple times per month and would have an inability to stay on task within employer-tolerated limits due to Crohn's disease and inflammatory arthritis. (Dkt. No. 11, at 11-12 [Pl. Mem. of Law].)

The Second Circuit does not require that the ALJ discuss every piece of evidence in the written decision. *See Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 78 (N.D.N.Y. 2005) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). Rather, "[w]here 'the evidence of record permits [the court] to glean the rationale of an ALJ's decision, [the ALJ is not required to explain] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'" *Barringer*, 358 F. Supp. 2d at 78 (quoting *Mongeur*, 722 F.2d at 1040) (alterations in original). "Moreover, '[a]lthough required to develop the record fully and fairly, the ALJ is not required to discuss all the evidence submitted, and [his] failure to cite to specific evidence does not indicate that it was not considered.'" *Barringer*, 358 F. Supp. 2d at 78 (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)) (alteration in original); *see also Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012) (noting that "'[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted'" and that "'[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.'") (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)).

Plaintiff's argument that the ALJ's failure to specifically discuss evidence from certain physicians creates an inference that the ALJ failed to consider that evidence is contradictory to the law of the both this Court and the Second Circuit. The appropriate consideration is not whether the ALJ discussed specific evidence, but rather whether his findings are supported by substantial evidence.

Plaintiff's argument related to the ALJ's failure to discuss the evidence in greater detail ignores the fact that the treatment evidence as a whole does not contradict the ALJ's findings.[2] A colonoscopy on February 6, 2012, showed large ulcers in the terminal ileum, mild patchy inflammation and colitis in the left colon consistent with Crohn's disease, a small rectal polyp, and a minor internal hemorrhoid. (T. 378-79.) On February 29, 2012, Plaintiff reported he was not taking the Colazal prescribed for Crohn's disease because he felt it caused more diarrhea; he reported alternating constipation and loose stools two to three times per day with abdominal cramping, though a physical examination was normal. (T. 486-87.) Plaintiff underwent his first Remicade infusion on March 6, 2012, and reported the following day that he had improvement in stool consistency with rare loose stool. (T. 483, 700.) Nurse Practitioner Linda Jones noted his abdomen was sensitive to touch but not painful. (T. 483.) On March 21, 2012, Plaintiff reported minor fatigue from the second Remicade infusion, but noted he was having two formed stools daily with no loose or watery stool, abdominal pain, or rectal bleeding. (T. 480.) On April 19, 2012, Plaintiff denied loose stools or diarrhea and reported only rare constipation, noting that he had one to two formed stools daily with no rectal bleeding. (T. 477.) On June 14, 2012, he was noted to be doing well on Remicade with no loose stools, diarrhea, or rectal bleeding, and he reported two formed stools daily. (T. 474.)

---

[2]     Notably, Plaintiff does not challenge the Appeals Council's denial of review, in which the Appeals Council found that the new evidence submitted did not provide a basis for changing the ALJ's decision. Rather, Plaintiff argues that the ALJ failed to discuss pertinent evidence in his decision. Since the ALJ would not have been able to discuss information that was not before him, the review of the evidence for this question is concerned primarily with the evidence that was before the ALJ when he rendered his decision and whether that evidence suggests greater limitations that were ignored.

However, on August 31, 2012, Plaintiff reported loose stools daily with abdominal cramping. (T. 471.) Nurse Practitioner Jones noted he had a history of medication non-compliance and stressed the importance of compliance with Remicade. (T. 471-73.) On October, 19, 2012, Plaintiff reported he had been doing well on Remicade until six to eight weeks prior when he began experiencing frequent bouts of diarrhea as well as pain and stiffness in his hands, wrists, and elbows. (T. 367.) Dr. Smiley observed low-grade synovitis of the small joints in the hands, wrists, elbows, and shoulders, though Plaintiff had a normal gait. (T. 368.) Imaging of the knees showed mild degenerative changes while imaging of the ankles, feet, hands, and shoulders were generally unremarkable. (T. 384-87.) On October 24, 2012, prednisone was temporarily increased due to reports of severe joint pain, though only pain with palpation of the left side of the chest was noted on exam. (T. 468-69.) On November 14, 2012, Plaintiff reported left shoulder and chest pain but examination was normal. (T. 463-64.) On November 19, 2012, Dr. Smiley and Dr. John observed no joint synovitis, normal lower back and lower extremity functioning, and normal gait. (T. 461.) On January 18, 2013, Plaintiff reported less joint pain and requested a decrease of prednisone; the physical examination was normal and his polyarthritis was noted to be somewhat improved. (T. 454-55.) On January 25, 2013, Plaintiff reported he had not had a Remicade infusion since October 2012 and Nurse Practitioner Jones noted he had also cancelled or no-showed to his recent appointments. (T. 451.) Plaintiff reported an interim increase in loose stool and diarrhea over the previous two months, but a physical exam was normal and Nurse Practitioner Jones made plans to re-start Remicade with pre-treatment with Benedryl to address adverse reactions to the infusions. (T. 452-53.) Plaintiff underwent a Remicade infusion with Benedryl pre-treatment on January 31, 2013, with no adverse reaction, and he reported on February 1, 2013, that he had one to two formed stools daily

with some bleeding.  (T. 448.)  He underwent another Remicade infusion with Benedryl pre-treatment with no adverse reaction on April 4, 2013.  (T. 646-47.)

On October 7, 2013, Joseph Kittinger, M.D., noted Plaintiff had not had a Remicade infusion since May 2013 and was reporting five to six stools per day with bleeding.  (T. 744.)  Dr. Kittinger observed mild abdominal tenderness with no masses.  (T. 745.)  A colonoscopy on February 17, 2014, revealed mild Crohn's, severe ilcocceal valve stenosis with active ulceration, small polyps, and a fissure of the anal canal.  (T. 732.)  On March 10, 2014, Plaintiff was observed to have mildly reduced range of motion in the cervical spine and shoulders as well as tenderness and severe pain in the right hip with range of motion.  (T. 712.)  Imaging of the sacroiliac joints and the right hip were unremarkable. (T. 724-25.)  On March 21, 2014, Plaintiff reported five to seven bowel movements per day and pain in the right lower quadrant of the abdomen, and it was again noted he had not had a Remicade infusion since May 2013.  (T. 741-42.)  Dr. Kittinger observed right lower quadrant tenderness and guarding with no masses and prescribed Humira.  (T. 742-43.)  On May 16, 2014, Plaintiff reported doing well since his first Humira injection, noting his abdominal pain was much improved and he was having one to two formed bowel movements daily.  (T. 738.)

Plaintiff has not shown that the ALJ's failure to discuss any of the above treatment evidence that was before the ALJ when rendering the decision impacted the validity of the findings.  These treatment notes do not show symptoms of either Crohn's disease or joint inflammation which would suggest greater limitations in Plaintiff's work-related functioning than was accounted for in the RFC.  Additionally, the ALJ expressly relied in part on the opinion from consultative examiner Tanya Perkins-Mwantuali, M.D., that Plaintiff had mild-to-moderate limitations in walking, standing, squatting, climbing, reaching, pushing, pulling, and carrying,

and none of the above treatment evidence showing primarily mild joint symptoms and abdominal pain contradicts Dr. Perkins-Mwantuali's findings. (T. 705-08.)

Although Plaintiff asserts that proper consideration of the treating physicians' notes would have necessitated the ALJ to find Plaintiff required additional limitations such as frequent, prolonged restroom breaks and excessive absences from work, the treatment evidence does not support his argument. As noted above, treatment records do show increased symptoms when Plaintiff experienced a Crohn's flare, but the majority of treatment records show that Plaintiff typically had more manageable symptoms, particularly when being treated with Remicade. (T. 474, 477, 480, 483, 486.) Treatment notes during periods of compliance with Remicade often indicated reports of one to two formed stools per day without diarrhea and none or minimal rectal bleeding. (T. 448, 474, 477, 480, 486.) Notably, he reported greater frequency of bowel movements and bleeding during periods when not consistently treated with Remicade. (*See e.g.*, T. 367, 451, 741, 744.) Additionally, although Plaintiff did develop an adverse reaction to Remicade, sources noted that the reaction was mitigated if he pre-treated with Benedryl prior to the infusion. (T. 448, 453, 644, 647, 648, 651, 664.) After a prolonged period without Remicade treatment, Plaintiff also reported improved abdominal pain and bowel movement frequency upon initiating treatment with Humira, though he did continue to experience flares. (T. 738, 773.) The evidence as a whole therefore suggests that Plaintiff's symptoms could be improved to a great extent with medication and treatment.[3] *See Stenoski v. Astrue*, No. 07-CV-0552, 2009 WL 6055830, at *5-6 (N.D.N.Y. July 23, 2009) (upholding the ALJ's finding that an impairment was

---

[3] The evidence submitted to the Appeals Council shows that Plaintiff experienced an increase in symptoms not controlled by Humira in December 2014, but this was noted to be in part due to the more recent development of a bowel abscess, which ultimately merited surgical intervention, rather than his typical Crohn's disease process. (T. 763-64, 766, 769, 817.)

not severe because it was well-controlled and the evidence showed that impairment was not disabling when controlled). The treatment evidence does not suggest that Plaintiff would experience the high frequency of bowel movements on a consistent basis that Plaintiff alleges, and therefore does not undermine the ALJ's decision to omit a limitation related to restroom breaks from the RFC.

Turning to Plaintiff's suggestion that the ALJ erred in failing to discuss any portion of the treatment evidence from Dr. Berg, this argument is not persuasive particularly because Dr. Berg did not begin treating Plaintiff until months after the date of the ALJ's decision and his records were not before the ALJ, but rather were later submitted along with his request for review to the Appeals Council. (T. 4, 812-20.) Since it would have been impossible for the ALJ to discuss anything contained in Dr. Berg's treatment notes, Plaintiff has no reasonable basis for arguing that the ALJ should have done so. Similarly, Plaintiff argues that the ALJ erred in failing to discuss pieces of evidence from Dr. Mirza, Dr. Smiley, and Dr. John that were all submitted for the first time to the Appeals Council, an argument which also must be rejected for the same reason as the argument related to Dr. Berg's treatment notes. (Dkt. No. 11, at 10 [Pl. Mem. of Law].) As already noted, Plaintiff does not challenge the Appeals Council's finding that this newer evidence did not provide a reasonable basis for changing the ALJ's decision, and this Court finds no reason for doubting the Appeals Council's conclusion after having reviewed the more recently submitted evidence.

For the above reasons, the ALJ's failure to include a discussion of certain treatment records in the written decision was not legal error. Remand is not warranted on this basis.

**B.**     **Whether the ALJ Failed to Develop a Full and Fair Record**

After careful consideration, the Court answers this question in the negative for the

reasons stated in Defendant's memorandum of law.  (Dkt. No. 12, at 24-25 [Def. Mem. of Law].)

To those reasons, this Court adds the following analysis.

Although the claimant has the general burden of proving that he or she has a disability

within the meaning of the Social Security Act, "'the ALJ generally has an affirmative obligation

to develop the administrative record'" due to the non-adversarial nature of a hearing on disability

benefits.  *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting *Melville v. Apfel*, 198

F.3d 45, 52 (2d Cir. 1999); citing *Draegert v. Barnhart*, 311 F.3d 468 (2d Cir. 2002), *Butts v.

Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004)).  "[I]t is the well-established rule in [the Second

Circuit] 'that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . .

affirmatively develop the record in light of the essentially non-adversarial nature of a benefits

proceeding.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Lamay v. Comm'r of

Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009)).  "'It is the ALJ's duty to investigate and develop

the facts and develop the arguments both for and against the granting of benefits.'" *Moran*, 569

F.3d at 112 (quoting *Lamay*, 562 F.3d at 508-09).  "Where there are no obvious gaps in the

administrative record, and where the ALJ already possesses a 'complete medical history,' the

ALJ is under no obligation to seek additional information in advance of rejecting a benefits

claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citing *Perez v. Chater*, 77 F.3d 41,

48 (2d Cir. 1996)). "Under the regulations, an ALJ must 'make every reasonable effort to help

the claimant obtain medical reports from the claimant's medical sources so long as permission is

granted to request such reports.'" *Janes v. Colvin*, No. 6:15-CV-1518, 2017 WL 972110, at *3

(N.D.N.Y. Mar. 10, 2017) (quoting *Hart v. Comm'r*, No. 5:07-CV-1270, 2010 WL 2817479, at

*5 (N.D.N.Y. July 16, 2010)). "[W]hen dealing with an unrepresented claimant, the ALJ has a 'heightened duty to scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Jackson v. Berryhill*, -- F. App'x. --, 2014 WL 2399459, at *1 (2d Cir. June 2, 2017) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).

However, "the ALJ need not seek additional information from a given provider when the record contains notes from the provider that are adequate for the ALJ to determine the claimant's disability." *Janes*, 2017 WL 972110, at *3 (citing *Merritt v. Colvin*, 142 F. Supp. 3d 266, 270 (N.D.N.Y. 2015)). "Generally, additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques." *Janes*, 2017 WL 972110, at *4 (citing 20 C.F.R. § 404.1520b; *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998)).

Plaintiff argues that the ALJ failed to meet his heightened duty to develop the record by not seeking a medical opinion from any of Plaintiff's treating physicians related to the functional effects of Plaintiff's impairments. (Dkt. No. 11, at 13-14 [Pl. Mem. of Law].) In doing so, Plaintiff cites to a number of cases in which this Court has found remand warranted due to the need to obtain a functional assessment from a treating physician. (*Id.*) However, the circumstances of this case differs from those cited by Plaintiff.

In *Molt v. Comm'r of Soc. Sec.*, No. 1:05-CV-0418, 2009 WL 5214920 (N.D.N.Y. Dec. 28, 2009), the Court found the ALJ failed to attempt to obtain a functional assessment from the treating psychiatrist because not only was there no medical source statement from any treating physician, but also evidence that the ALJ had been made aware through the statements of a reviewing State Agency medical source that the evidence from the relevant time period was

15

insufficient to make a determination and that a mental examination was required. *Molt*, 2009 WL 5214920, at *5-6. The situation in the current case differs from *Molt* because not only is there ample treatment evidence from the relevant time period from which the ALJ could assess the impact on Plaintiff's functioning, but also a consultative examination and opinion that provided further guidance. The insufficiency of evidence that was the basis of the outcome in *Molt* is not present in this case.

In *Bennett v. Astrue*, No. 1:06-CV-0649, 2009 WL 1035106 (N.D.N.Y. Apr. 17, 2009), the Court found remand was warranted for development of the record, particularly obtaining a functional evaluation from the treating physicians, where there were no opinions present, and yet the ALJ purported to afford great weight to the treatment notes provided by Dr. Anchar. *Bennett*, 2009 WL 1035106, at *11-12. The Court noted that the ALJ had not made similar statements of the weight afforded to the treatment notes from multiple other treating physicians, something which would be pertinent if he was going to elevate Dr. Anchar's treatment notes and findings above those of the other treating sources. *Bennett*, 2009 WL 1035106, at *12. Additionally, the Court found that the ALJ erroneously relied on a State Agency medical consultant's opinion despite the lack of information about that source's qualifications and his reliance on the report of a consultative examiner who did not provide a functional analysis. *Id.* Unlike in *Bennett*, the ALJ here did not inexplicably elevate the findings of one source over others (despite Plaintiff's arguments regarding selective discussion of the evidence). He additionally relied on the opinion of Dr. Perkins-Mwantuali, who provided an assessment related to Plaintiff's abilities to perform work-related functions such as walking, standing, squatting, climbing, reaching, pushing, pulling, and carrying. (T. 30, 708.) Although Dr. Perkins-Mwantuali did not frame these limitations in terms of the durational language used by the

16

regulations and Dictionary of Occupational Titles, a consideration of her opinion along with her detailed examination and other findings alleviates the vagueness in her statement and supports the ALJ's interpretation that Plaintiff would remain able to perform a reduced range of light work.  (T. 30, 704-08); *see also Monroe v. Comm'r of Soc. Sec.,* No. 5:15-CV-1235, 2016 WL 7971330, at *7-8 (N.D.N.Y. Dec. 29, 2016), report and recommendation adopted by 2017 WL 318838 (N.D.N.Y. Jan. 23, 2017)) (noting that, even where a "consultative examiner's opinion may use terminology that, on its face, is vague, such language does not render the consultative examiner's opinion useless in all situations" so long as it is "well supported by his extensive examination" or it can be made "more concrete" by "the facts in the underlying opinion and other opinion evidence in the record") (*citing Zongos v. Colvin,* No. 5:12-CV-1007, 2014 WL 788791, at *10 (N.D.N.Y. Feb. 25, 2014); *Waldau v. Astrue,* No. 5:11-CV-0925, 2012 WL 6681262, at *4 (N.D.N.Y. Dec. 21, 2003); *Davis v. Massanari,* No. 00-CV-4330, 2001 WL 152495, at *8 (S.D.N.Y. Nov. 29, 2001)).  Consequently, unlike in *Bennett*, the ALJ in this case did not lack a useful functional opinion from a credible source to guide his analysis and did not inexplicably or disproportionately rely only on evidence supporting his findings.

In *Dickson v. Astrue*, No. 1:06-CV-0511, 2008 WL 4287389 (N.D.N.Y. Sept. 17, 2008), this Court noted that "[r]emand is appropriate in instances, such as this, when the reviewing court is 'unable to fathom the ALJ's rationale in relation to the evidence in the record' without 'further findings or clearer explanation for the decision.'"  *Dickson*, 2008 WL 4287389, at *14 (quoting *Williams v. Callahan*, 30 F. Supp. 2d 588, 594 (E.D.N.Y. 1998)).  The Court in *Dickson* found that the decision lacked a detailed analysis of the plaintiff's mental RFC due to an incomplete record.  *Dickson*, 2008 WL 4287389, at *14.  Unlike in *Dickson*, in this case, the Court is able to trace the ALJ's rationale from the medical evidence—including the treatment

notes and Dr. Perkins-Mwantuali's opinion—to his conclusions. Plaintiff does not allege how the evidence in the record is deficient absent a treating physician opinion such that the ALJ would not have been able to make an appropriate determination without obtaining such an opinion.

In *Crysler v. Astrue*, 563 F. Supp. 2d 418 (N.D.N.Y. 2008), the Court found that the ALJ failed to meet his enhanced duty to ensure a complete record where he failed to contact the treating physician (or to suggest to the *pro se* plaintiff that she should seek such an opinion from that physician) where one physician failed to properly complete the opinion form he did submit, and an opinion from that physician's nurse practitioner put the ALJ on notice that the physician's opinion might differ from the ALJ's conclusions. *Crysler*, 563 F. Supp. 2d at 433. Unlike in *Crysler*, there is nothing in this case to suggest the ALJ should have been reasonably aware that any of the treating physicians might have believed Plaintiff was disabled or significantly impaired beyond the scope of the RFC. No physician provided any statements that Plaintiff was unable to work, even temporarily, and the notations and objective findings in the treatment notes do not suggest that any of these physicians likely would have opined disabling functional limitations. Consequently, the component of notice to conduct a further inquiry is not present in this case as it was in *Crysler*.

In *Aiello v. Comm'r of Soc. Sec.*, No. 5:06-CV-1021, 2009 WL 87581 (N.D.N.Y. Jan. 9, 2009), the Court noted that "an ALJ *may* re-contact medical sources if the evidence received from the treating physician or other medical source is inadequate to determine disability and additional information is needed to reach a determination." *Aiello*, 2009 WL 87581, at *5 (citing 20 C.F.R. § 404.1512(e)) (emphasis added). The Court found error in the ALJ's decision to afford controlling weight to an assessment from a State Agency medical consultant without

attempting to re-contact any treating physicians regarding the plaintiff's physical functioning. *Aiello*, 2009 WL 87581, at *5. However, the Court in *Aiello* did not provide any indication as to why it found that the evidence related to the plaintiff's physical functioning was inadequate to allow the ALJ in that case to determine disability, or why the treating physician's opinion was necessary to complete the record. *Id.* Because this Court does not believe that a *per se* rule related to the need to obtain a statement from a treating physician in every case is supported by the decisions of the Second Circuit, it declines to follow *Aiello*'s example given the lack of clear rationale behind the conclusion in that case. Plaintiff offers no indication as to how the record is inadequate to determine disability given the volume of treatment evidence, evidence that shows that his conditions were fairly improved with treatment and there was a lack of clinical findings supporting allegations of bowel movement frequency or limiting joint pain and, as well as the presence of the opinion from examining physician Dr. Perkins-Mwantuali.

Additionally, the record shows that Plaintiff became represented prior to seeking review of the ALJ's decision by the Appeals Council and yet that representative did not submit any medical opinions or functional assessments from any of Plaintiff's treating sources, despite submitting other treatment evidence. (T. 4.) This is despite the fact that Plaintiff's representative requested and was granted two extensions of time in order to submit further evidence. (T. 11, 14.) The fact that Plaintiff's representative had ample opportunity to obtain an opinion from one or multiple of Plaintiff's treating physicians to submit to the Appeals Council and failed to do so suggests that either no opinions existed or the physicians were not amenable to providing them. It also calls into question whether remand for further development of the record would be useful, since it would be reasonable to assume that Plaintiff's representative

would have attempted to obtain and submit a treating physician opinion to the Appeals Council if he thought it vital to creating a complete and adequate record.

Plaintiff makes no attempt to show how the evidence that was in the record was insufficient to allow the ALJ to render a decision, relying instead on assertions that an ALJ is required to have a statement from a treating physician in all cases in order for the record to be complete. Such a broad *per se* legal principle is not supported by the applicable legal precedent and rulings of this Court or the Second Circuit. *See Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. 2015) (noting that the Second Circuit "does not always treat the absence of a medical source statement from claimant's treating physician as fatal to the ALJ's determination" and finding that, because of the extensive medical record available to the ALJ, there were no obvious gaps that would necessitate remand based on a failure to obtain an opinion from a treating physician) (citing *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33-34 (2d Cir. 2013)). To the contrary, an ALJ is not required to rely on a medical opinion when making his determination, as the sole responsibility for determining a claimant's RFC is on the ALJ, which is based on an evaluation of all the medical and other evidence in the record. *See Columbel v. Comm'r of Soc. Sec.*, No. 6:16-CV-0773, 2017 WL 3175599, at *11 (N.D.N.Y. July 26, 2017); *Atkinson v. Comm'r of Soc. Sec.*, No. 5:16-CV-0809, 2017 WL 1288723, at *7 (N.D.N.Y. Apr. 6, 2017); *MacMillen v. Colvin*, No. 14-CV-311S, 2015 WL 3823771, at *3 (W.D.N.Y. June 19, 2015) (citing 20 C.F.R. § 404.1527(d)(2)). Because there was no gap in the record that would have prevented the ALJ from making an appropriate and informed determination of disability, there was no requirement for him to develop the record further by seeking medical opinions from the treating sources. Remand is not warranted on this basis.

**C.** **Whether the ALJ's Analysis of the Listing of Impairments is Consistent With Applicable Legal Standards and Supported By Substantial Evidence**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 12, at 22-24 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

"Plaintiff has the burden of proof at step three to show that her impairments meet or medically equal a Listing." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009) (citing *Naegele v. Barnhart*, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006)). "To meet a Listing, Plaintiff must show that her medically determinable impairment satisfies all of the specified criteria in a Listing." *Rockwood*, 614 F. Supp. 2d at 272 (citing 20 C.F.R. § 404.1525(d)). "If a claimant's impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify." *Rockwood*, 614 F. Supp. 2d at 272 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990)). Additionally, a court may be able to uphold an ALJ's finding that a claimant does not meet a Listing even where the decision lacks an express rationale for that finding if the determination is supported by substantial evidence. *Rockwood*, 614 F. Supp. 2d at 273 (citing *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982)).

Plaintiff argues that the ALJ's analysis of whether he met the requirements of a listed impairment was inadequate because the ALJ failed to provide a detailed rationale for that conclusion. (Dkt. No. 11, at 14-16 [Pl. Mem. of Law].) However, as already noted, this Court has determined previously that an ALJ's Listing finding may be upheld even where the ALJ fails to provide express rationale for that finding, so long as the finding is supported by substantial evidence. *Rockwood*, 614 F. Supp. 2d at 273 (citing *Berry*, 675 F.2d at 468).

Substantial evidence supports the ALJ's Listing findings related to both Listing 5.06[4] and

Listing 14.09.[5] The medical evidence does not show that Plaintiff displayed all of the criteria to

---

[4]      Listing 5.06: Inflammatory bowel disease (IBD) documented by endoscopy, biopsy, appropriate medically acceptable imaging, or operative findings with:
(A) Obstruction of stenotic areas (not adhesions) in the small intestine with proximal dilation, confirmed by appropriate medically acceptable imaging or in surgery, requiring hospitalization for intestinal decompression or for surgery, and occurring on at least two occasions at least 60 days apart within a consecutive [six]-month period; OR
(B) Two of the following despite continuing treatment as prescribed and occurring within the same consecutive [six]-month period:
      (1) Anemia with hemoglobin of less than 10.0 g/dL, present on at least two evaluations at least 60 days apart; or
      (2) Serum albumin of 3.0 g/dL or less, present on at least two evaluations at least 60 days apart; or
      (3) Clinically documented tender abdominal mass palpable on physical examination with abdominal pain and cramping that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or
      (4) Perineal disease with a draining abscess or fistula, with pain that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or
      (5) Involuntary weight loss of at least 10 percent from baseline, as computed in pounds, kilograms, or BMI, present on at least two evaluations at least 60 days apart; or
      (6) Need for supplemental daily enteral nutrition via a gastrostomy or daily parenteral nutrition via a central venous catheter.  20 C.F.R. § 404, Subpart P, Appendix I, § 5.06.

[5]      Listing 14.09: Inflammatory arthritis.  As described in 14.00D6.  With:
(A) Persistent inflammation or persistent deformity of:
      (1) One or more major peripheral weight-bearing joints resulting in an inability to ambulate effectively (as defined in 14.00C6); or
      (2) One or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively (as defined in 14.00C7), or
(B) Inflammation or deformity in one or more major peripheral joints with:
      (1) Involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity; and
      (2) At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss), or
(C) Ankylosing spondylitis or other spondyloarthropathies, with:
      (1) Ankylosis (fixation of the dorsolumbar or cervical spine as show by appropriate medically acceptable imaging and measured on physical examination at 45 [degrees] or more of flexion from the vertical position (zero degrees); or
      (2) Ankylosis (fixation of the dorsolumbar or cervical spine as show by appropriate medically acceptable imaging and measured on physical examination at 30 [degrees] or more of

meet any subsection within these Listings.  Plaintiff points to a few discrete mentions of

symptoms without explaining how they would constitute sufficient evidence to establish the

required severity.  For example, Plaintiff recites three treatment notes where Plaintiff was noted

to have joint-related symptoms, but fails to explain how these mostly mild symptoms resulted in

an inability to perform fine and gross movements.  (Dkt. No. 11, at 15-16 [Pl. Mem. of Law].)

Similarly, Plaintiff also points to his various reports of symptoms to physicians, but fails to

acknowledge that many of these were not present on an ongoing basis and that many of

Plaintiff's Crohn's symptoms were appreciably improved with continuing treatment as already

discussed.  (Dkt. No. 11, at 16 [Pl. Mem. of Law].)  The medical evidence simply does not show

that Plaintiff met all the criteria required to be found disabled under either of these Listings.

In the alternative, Plaintiff argues that the ALJ was required to obtain an opinion from his

treating physicians regarding whether he met the criteria of the Listings.  (Dkt. No. 11, at 15-16

[Pl. Mem. of Law].)  However, as already discussed previously, there was no gap in the record

that would have necessitated the ALJ to obtain a treating physician statement, and the medical

evidence does not show symptoms that would suggest Plaintiff's conditions had signs or

symptoms at the severity required to meet a Listing.  Additionally, Plaintiff points to no legal

---

flexion (but less than 45 [degrees]) measured from the vertical position (zero degrees), and
involvement of two or more organs/body systems with one of the organs/body systems involved
to at least a moderate level of severity, or
(D) Repeated manifestations of inflammatory arthritis, with at least two of the constitutional
symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the
following at the marked level:
     (1) Limitation of activities of daily living,
     (2) Limitation in maintaining social functioning,
     (3) Limitation in completing tasks in a timely manner due to deficiencies in
concentration, persistence, or pace.  20 C.F.R. § 404, Subpart P, Appendix I, § 14.09.

authority that imposes a duty on the ALJ to obtain a medical source statement from a physician in order to properly assess whether a plaintiff meets the criteria of an applicable Listing.

For the above reasons, the ALJ's findings related to the Listing of Impairments are supported by substantial evidence, and remand is not warranted on this basis.

### D.      Whether the Credibility Finding is Supported By Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 12, at 20-22 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

In determining whether a claimant is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations.  "'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)).  The Second Circuit recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'" *Schlichting*, 11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs*., 705 F.2d 638, 642 (2d Cir. 1983); *Aponte v. Sec'y, Dep't of Health and Human Servs*., 728 F.2d 588, 591 (2d Cir. 1984)).  Due to the fact that the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is

generally entitled to deference. *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)).

In concluding Plaintiff's allegations were not entirely credible, the ALJ noted that evidence showed Plaintiff's condition was stable on Humira but he was not always compliant with medications, that Plaintiff had admitted to working through Crohn's disease symptoms in the past, that Plaintiff admitted to being able to perform activities like light repairs and cutting the grass even though it took him more time, that his reported daily activities were inconsistent with his reports of limitations in using his hands, that no surgery had been recommended for Crohn's disease, that treatment had been non-aggressive and conservative, and that no treating source had opined any disabling limitations. (T. 31.) Plaintiff argues that the reasons provided by the ALJ for the adverse credibility determination were not supported by substantial evidence. (Dkt. No. 11, at 17-20 [Pl. Mem. of Law].) However, Plaintiff's argument is not persuasive.

The ALJ's conclusion that Plaintiff's reported daily activities that were inconsistent with his alleged limitations is supported by substantial evidence. In addition to reporting an ability to do light repairs and cutting the grass with extra time, Plaintiff also reported other activities that suggest an ability to perform at a greater level of functioning than alleged. Plaintiff reported to Dr. Perkins-Mwantuali that he cooked twice per week, cleaned "when he can," performed child care five days a week, showered and dressed independently on a daily basis, watched television, and socialized with friends. (T. 705.) He personally completed a written functioning form, in which he indicated he took care of his children and pets with help from his wife, had no problems with personal care, could prepare microwaved foods daily, cleaned when "able to," went outside alone, drove a car, shopped in stores and by computer, paid bills, played games on the internet, and spent time with others daily. (T. 293-98.) Rather than being "inconsequential"

as Plaintiff asserts, his reported activities documented throughout the record are at odds with his reports of an inability to perform any work such that they reasonably undermine the credibility of his allegations. *Morris v. Comm'r of Soc. Sec.,* No. 12-CV-1795, 2014 WL 1451996, at *8 (N.D.N.Y. Apr. 14, 2014) ("The issue is not whether Plaintiff's limited ability to undertake normal daily activities demonstrates her ability to work. Rather, the issue is whether the ALJ properly discounted Plaintiff's testimony regarding her symptoms to the extent that it is inconsistent with other evidence.") Because the range of Plaintiff's activities is a proper consideration when assessing credibility and the reported activities are inconsistent with Plaintiff's allegations, the ALJ's citation to these activities as a basis for the credibility determination is supported by substantial evidence.

Plaintiff argues that whether or not he was compliant with medications, particularly Humira, is "irrelevant to his testimony as to the limitations he suffers," without explaining why non-compliance would be irrelevant. (Dkt. No. 11, at 19 [Pl. Mem. of Law].) To the contrary, compliance with prescribed treatment is highly relevant to the credibility analysis, particularly where, as here, the evidence shows that Plaintiff's symptoms were improved to an appreciable degree when he consistently received either Remicade or Humira. (T. 448, 474, 477, 480, 483, 486, 738.) Treatment notes repeatedly indicate that Plaintiff had a long history of non-compliance with his medications for Crohn's disease and sources had to counsel him that strict adherence to the dosing of Remicade had to be followed for it to be effective. (*See e.g.*, T. 448, 451, 471, 488, 495.) Additionally, non-compliance with prescribed treatment without a good reason is one of the factors the Agency specifically mentions as an indicator of a claimant's credibility. *See Bockeno v. Comm'r of Soc. Sec.*, No. 5:14-CV-0365, 2015 WL 5512348, at *7-8 (N.D.N.Y. Sept. 15, 2015) (citing SSR 96-7p, 1996 WL 374186 (1996)); *Smith v. Astrue*, No.

09-CV-0470, 2011 WL 6739509, at \*4-5 (N.D.N.Y. Nov. 4, 2011).  Although some of Plaintiff's gaps in treatment and non-compliance might have stemmed from issues with health insurance coverage during portions of 2013 and 2015, the evidence does not suggest that this reason would have explained non-compliance during other times.  (T. 744, 766.)  Because the evidence shows that compliance with treatment produced appreciable improvements in Plaintiff's condition, the ALJ's consideration of non-compliance was proper and provided a basis supported by substantial evidence for the adverse credibility finding.

Additionally, despite Plaintiff's objections, the conservative nature of treatment is a factor that the ALJ is permitted to consider as part of the broader credibility analysis.  *See Phelps v. Comm'r of Soc. Sec.*, No. 1:15-CV-0499, 2016 WL 3661405, at \*8 (N.D.N.Y. July 5, 2016) (noting that "a plaintiff may be deemed less credible 'if the level of frequency of treatment is inconsistent with the level of complaints'").  Plaintiff's treatment generally consisted of medications such as Remicade and Humira at different times, occasional Mobic and prednisone for arthritis symptoms, and observational testing like colonoscopies.  (*See e.g.*, T. 368, 458, 469, 666-68, 670, 738, 792.)  Plaintiff did eventually undergo surgery months after the date of the ALJ's decision, but this surgery appears to have been the result of the development of an abscess rather than as a result of strictly treating the regular symptoms of his Crohn's disease.  (T. 813, 817.)  The fact that Plaintiff eventually did have surgery therefore does not compellingly suggest that his Crohn's symptoms were of a greater severity than the ALJ credited during the relevant period.  Given that the evidence shows that the mostly conservative treatment produced noticeable improvement in Plaintiff's symptoms during the relevant time period, the ALJ properly considered this as a factor adverse to Plaintiff's credibility.

Because the ALJ provided multiple reasons supported by substantial evidence for the credibility finding, this Court will not second-guess his conclusion. Notably, even if some of the reasons cited by the ALJ are not individually supported, the overall credibility finding must still be upheld on the basis of the provision of the multiple other reasons that are supported. *See Schlichting*, 11 F. Supp. 3d at 206-07 (finding harmless error in the ALJ's adverse inference of a failure to pursue treatment where the credibility analysis as a whole was supported by substantial evidence); *see also Taylor v. Colvin*, No. 3:14-CV-0928, 2016 WL 1049000, at *8-9 (N.D.N.Y. Mar. 11, 2016) (noting that the ALJ's failure to inquire into the reasons for gaps in mental health treatment prior to using those gaps against the plaintiff's credibility was harmless where the ALJ provided other reasons supported by substantial evidence to support the overall credibility determination). Remand is not warranted on this basis.

### D. Whether the Step Five Finding is Supported By Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 12, at 25-26 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

Although the claimant has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'" *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)). "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [] and [the hypothetical] accurately reflect[s] the limitations and capabilities of the claimant involved." *McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545,

28

1553-54 (2d Cir. 1983); citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)).  If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 211 (N.D.N.Y. 2009) (citing *Melligan v. Chater*, No. 94-CV-944S, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

Plaintiff essentially argues that the hypothetical question posed to the vocational expert at the hearing was incomplete because it did not incorporate limitations opined by any treating physician.  (Dkt. No. 11, at 20-21 [Pl. Mem. of Law].)  However, as already detailed previously, the ALJ did not have a duty to obtain a medical source statement from a treating physician because the evidence in the record was sufficient for him to make a determination as to disability.  After reviewing all the evidence, including the examination and opinion from consultative examiner Dr. Perkins-Mwantuali, the ALJ incorporated the limitations supported by that evidence into the hypothetical question.  Plaintiff does not provide any indication as to what additional limitations supported by the evidence were omitted from the hypothetical question.  Plaintiff does specify the alleged need for limitations related to frequent access to and use of a restroom on an unpredictable basis, but as already discussed, such a limitation is not supported by the medical evidence.  (Dkt. No. 11, at 21 [Pl. Mem. of Law].)  Because the hypothetical question posed to the vocational expert contained all the limitations that were supported by the medical evidence, the ALJ was entitled to rely on the vocational expert's testimony in response to that hypothetical question, and that testimony provides substantial evidence to support the Step Five finding.  Remand is not warranted on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is

**DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is

**GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is

**AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: September 27, 2017
       Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge